UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RON KURTH, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:09-CV-108RM |
| | ) | |
| ARCELORMITTAL USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

L.K.K, by her parent Ron Kurth, filed this class action lawsuit seeking equitable relief and damages in the Superior Court of Lake County, Indiana, alleging that the eleven industrial companies involved as defendants have violated (and continue to violate) Indiana's nuisance statute. Alleging minimal diversity under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A), the defendant companies removed the action to this court pursuant to 28 U.S.C. § 1453(b). The CAFA expands federal court jurisdiction over class action suits, but provides two exceptions to that expanded federal court jurisdiction: the "home-state exception" and "local-controversy exception." The plaintiff has moved to remand (doc. # 34), arguing that one or both of the exceptions to federal jurisdiction apply. For the reasons stated below, the court finds that neither exception applies and DENIES the plaintiff's motion to remand.

## I.  PARTIES

Plaintiff L.K.K. is a minor who has resided in Crown Point, Lake County, Indiana her entire life and attends school in Lake County at Crown Point High School. Her father, Ron Kurth, brought this class action suit on behalf of his daughter and those similarly situated, alleging a violation of Indiana nuisance law for the alleged harm caused by the defendants' release of toxic chemicals in and around East Gary, Indiana. The plaintiff's proposed class is defined as: "All minors who are citizens of Indiana that have attended school in Lake County, Indiana for the period January 1, 1998 up to and including the present." (Complaint, ¶ 53). L.K.K. has brought suit against the following eleven defendants: ArcelorMittal USA, Inc., ArcelorMittal Burns Harbor LLC, Dover Chemical Corp., Edw. C. Levy Co., HARSCO Corp., the Marley-Wylain Co., Pollution Control Indust. Inc., Rhodia, Inc., UGN, Inc., Union Tank Car Co., and United States Steel Corp.

The following facts are taken from the plaintiff's complaint, unless indicated otherwise. Defendant ArcelorMittal USA, Inc., formerly known as Mittal Steel USA, Inc., is a Delaware corporation headquartered in Chicago, Illinois. ArcelorMittal is the world's largest steel company. Through its subsidiary, Mittal, ArcelorMittal owns and operates two mills in East Chicago, Lake County, Indiana. These mills produce iron and steel, and L.K.K. contends they emit toxic chemicals that include cadmium and cadmium compounds, arsenic and arsenic compounds, chromium and chromium compounds, chlorine, and antimony and antimony compounds.

Defendant ArcelorMittal Burns Harbor, LLC, an ArcelorMittal subsidiary, is a limited liability company organized under Delaware law with its principal place of business in Porter County, Indiana.[1] L.K.K. contends that the Burns Harbor plant emits toxic chemicals, including lead and lead compounds, chromium and chromium compounds, nickel and nickel compounds, polycyclic aromatic compounds, and sulfuric acid, in the Lake County area.

Defendant Dover Chemical Corporation is an Ohio corporation headquartered in Ohio and a subsidiary of ICC Chemical Company, which is headquartered in New York. Dover produces various chemicals, flame retardants, and additives for water-based and oil-based metal working fluids. It owns and operates a chemical manufacturing plant in Hammond, Lake County, Indiana. L.K.K. alleges that the Hammond plant emits toxic chemicals, including chlorine, hydrochloric acid, trimethylbenzene, 1,2,4- and diethanolamine.

Defendant Edw. C. Levy Co. is a Michigan corporation headquartered in Detroit, Michigan. ECL owns and operates ground or treated mineral earth manufacturing plants in Burns Harbor, Porter County, Indiana and also in Gary, Lake County, Indiana. L.K.K. contends that ECL produces toxic chemicals, including manganese and manganese compounds.

---

[1] In her complaint, L.K.K. alleges that Burns Harbor is a Delaware corporation headquartered in Lake County. The defendants respond that this is inaccurate and that Burns Harbor is a limited liability company, with no facilities in Lake County, but with a plant in Burns Harbor, Porter County. In either event, this is an Indiana corporation.

Defendant HARSCO Corporation is a Delaware corporation headquartered in Camp Hill, Pennsylvania. HARSCO is a diversified industrial services and engineered products company that owns and operates ground or treated mineral earth manufacturing plants. Two of HARSCO's facilities are located in East Chicago, Lake County, Indiana, and L.K.K. alleges that these facilities emit toxic chemicals, including manganese and manganese compounds.

Defendant the Marley-Wylain Co., also known as Weil-McLain, is a Delaware corporation headquartered in North Carolina. Weil-McLain is a manufacturer of heating products and owns and operates a plant in Michigan City, LaPorte County, Indiana. L.K.K. alleges that the plant emits toxic chemicals, including manganese and manganese compounds and lead and lead compounds, in the Crown Point area.

Defendant Pollution Control Industries, Inc. is a Delaware corporation with its principal place of business in East Chicago, Lake County, Indiana. PCI is a hazardous waste collector and owns and operates a waste collection facility in East Chicago that L.K.K. alleges emits toxic chemicals, including urethane and diisocyanates.

Defendant Rhodia, Inc., a chemical manufacturer, is a Delaware corporation headquartered in New Jersey. Rhodia owns and operates a chemical manufacturing plant in Hammond, Lake County, Indiana that L.K.K. contends emits toxic chemicals, including sulfuric acid and aniline.

Defendant UGN, Inc. is an Illinois corporation headquartered in Tinley Park, Illinois. UGN is a full-service provider of acoustical solutions to the auto industry and owns and operates an auto-parts manufacturing plant in Valparaiso, Porter County, Indiana. L.K.K. contends that the plant emits toxic chemicals, including diisocyanates.

Defendant Union Tank Car Company is a Delaware corporation headquartered in Chicago, Illinois. Until approximately May 2008, UTC owned and operated a metal tank manufacturing and operating plant in East Chicago, Lake County, Indiana that L.K.K. alleges emitted toxic chemicals, including manganese and manganese compounds, chromium and chromium compounds, nickel and nickel compounds, and xylene (mixed isomers).

Defendant United States Steel Corp. is a Delaware corporation headquartered in Pennsylvania. USS owns and operates a steel mill in East Chicago, Lake County, Indiana and Gary, Lake County, Indiana that allegedly emit toxic chemicals, including chromium and chromium compounds, arsenic and arsenic compounds, ammonia, antimony and antimony compounds, and benzene.

## II. Background

L.K.K. seeks to bring a class action nuisance suit against the defendants because of the industrial pollution emitted by their operations in and around Lake County, Indiana. L.K.K. contends that for decades the defendants have exposed Lake County schoolchildren to toxic chemicals and the resulting

physical harm that accompanies such exposure. According to L.K.K., the toxic emissions released in Lake County by the defendants include a variety of known, probable or possible carcinogens and other compounds that can adversely affect the health of the putative class, such as manganese and manganese compounds, lead and lead compounds, cadmium and cadmium compounds, sulfuric acid, polycyclic aromatic compounds, zinc and zinc compounds, chlorine, urethane, and diisocyanates.

According to L.K.K., studies have shown that the air outside Lake County schools is among the worst in the nation and because children are particularly susceptible to industrial pollution, children who attend Lake County schools face a significant risk of physical harm. L.K.K. further contends that East Chicago schools rank in the first percentile of schools in the nation for having the most toxic surrounding air. In the complaint, L.K.K. indicates several schools that have been rated with the nation's worst toxic air levels and alleges that the polluters most responsible for the toxins outside those schools are Mittal, HARSCO, ECL, Union Tank, USS, and Dover Chemical.

L.K.K.'s proposed class is defined as: "All minors who are citizens of Indiana that have attended school in Lake County, Indiana for the period January 1, 1998 up to and including the present." (Plf's Compl., ¶ 53). The putative class seeks actual damages and equitable relief against the defendants and request that they be ordered to set up a medical monitoring program to help preserve the health and longevity of the children of Lake County schools. This action involves a localized harm and seeks compensation for injuries that

were suffered within Lake County as a result of the defendants' actions in and around that county.

L.K.K. filed this action in Lake County Superior Court and the defendants removed the case to this court under CAFA, 28 U.S.C. § 1332(d)(2). L.K.K. seeks remand to state court, claiming that both or either the "home-state" or "local-controversy" exception to CAFA applies.

## III. DISCUSSION

The Class Action Fairness Act gives federal district courts original jurisdiction over class actions in which (1) the aggregate amount in controversy exceeds $5 million, (2) any member of a class of plaintiffs is a citizen of a state different from any defendant ("minimal diversity"), and (3) the proposed class consists of 100 or more persons. 28 U.S.C. § 1332(d)(2) and (5)(B). There are two exceptions — a "home-state" and "local-controversy" exception — for controversies that are truly local in nature. 28 U.S.C. § 1332(d)(4)(A). The CAFA however favors federal jurisdiction over class actions. Evans v. Walter Indust., Inc., 449 F.3d 1159, 1163 (11th Cir. 2006).

The proponent of federal jurisdiction bears the burden of establishing federal jurisdiction under CAFA. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447-448 (7th Cir. 2005). "Whichever side chooses federal court must establish jurisdiction." Id. at 447. Once this initial burden is met, the party seeking remand bears the burden of establishing that an exception to CAFA applies. Hart v. FedEx Ground Package Sys., Inc., 457 F.3d 675, 680-681 (7th

Cir. 2006) (stating once federal jurisdiction has been established under § 1332(d), the objecting party bears the burden as to the applicability of any statutory exception); *see also* <u>Evans v. Walter Indust.</u>, 449 F.3d at 1164. "A plaintiff seeking to establish [an] exception must present evidence in order to meet [her] burden of proof." <u>Gerstenecker v. Terminix Intern., Inc.</u>, No. 07-CV-164, 2007 WL 2746847, at *3 (S.D. Ill. Sept. 19, 2007) (*citing* <u>Hart v. FedEx</u>, 457 F.3d at 682).

The defendants removed this action, so they bear the initial burden to show that the CAFA requirements are met. The defendants have met that burden. The aggregate amount in controversy exceeds $5,000,000. "The question is not what damages a plaintiff will recover, but what amount is 'in controversy' between the parties." <u>Brill v. Countrywide</u>, 427 F.3d at 448. L.K.K. seeks to have the defendants implement:

> a medical monitoring program that includes but may not be limited to: (i) a periodic diagnostic medical examination program . . . that incorporates a protocol of periodic screening, testing and diagnostic procedures . . .; (ii) keeping the public informed about potential health risks associated with Defendants' emissions and exposure prevention measures . . .; (iii) monitoring air quality in Lake County; (iv) evaluating the health concerns and complaints, illnesses reported by health care providers and the rates of cancer and birth defects in the Lake County community of Plaintiffs and the Class; (v) providing a 24-hour toll free hotline for citizens to speak to someone about their pollution-related health concerns; and (vi) convening a Citizen Advisory Board to allow continued public input on the Medical Monitoring Program.

(Plf.'s Compl., ¶ 51). L.K.K. doesn't dispute that the amount in controversy is greater than $5 million (nor did she plead in such a way as to limit the relief sought to that amount) and based on the broad relief sought from the eleven

8

large industrial companies in this class action, the court finds that the amount in controversy element has been met.

Minimal diversity exists between the plaintiff and at least one defendant. "[F]or purposes of the diversity jurisdiction a corporation is a citizen of two states (though they may coincide): the state in which the corporation is incorporated and the state in which its principal place of business is located." Pastor v. State Farm Mut. Auto Ins. Co., 487 F.3d 1042, 1047 (7th Cir. 2006). L.K.K. is a citizen of Indiana and the plaintiff's proposed class was carefully drawn to consist only of Indiana citizens. Defendant USS is a Delaware corporation with its principal place of business in Pennsylvania. (*See* Notice of Remand, doc. # 2, ¶ 13). L.K.K. has only argued that two of the defendants — Burns Harbor and PCI — are citizens of Indiana. Minimal diversity exists for the purposes of 28 U.S.C. § 1332(d).

Finally, under 28 U.S.C. § 1332(d)(5)(B), the proposed class must not be less than 100 persons. The plaintiff's proposed class definition includes "[a]ll minors who are citizens of Indiana that have attended school in Lake County, Indiana [since 1998]." The plaintiff doesn't dispute that this class includes more than 100 persons, and the court finds that based on the proposed class definition that this requirement has been met. Because the amount in controversy exceeds $5 million, minimal diversity exists, and the class is greater than 100 persons, the defendants have met their burden under CAFA.

L.K.K. argues that this case should be remanded under one or both of the exceptions to CAFA: the "home-state exception" or the "local-controversy exception."

## A. The Home-State Exception

The "home-state exception" requires a district court to decline to exercise jurisdiction over a class action if two-thirds or more of the proposed class members in the aggregate, and the primary defendants, are citizens of the state in which the action originally was filed. 28 U.S.C. § 1332(d)(4)(B). As to the first requirement, the proposed class is defined as: "All minors who are citizens of Indiana . . . ." (Plf.'s Compl., ¶ 53). The defendants point out though that the plaintiff's allegations in the complaint aren't restricted to Indiana citizens and refer generally to Lake County residents and in some instances, past residents. For example, in the prayer for relief, the plaintiff seeks "medical monitoring program for all past and current minor residents of Lake County, Indiana and/or all minors that attended schools in Lake County, Indiana." Because allegations of residency are insufficient to establish citizenship, Tylka v. Gerber Prod. Co., 211 F.3d 445, 448 (7th Cir. 2000), the defendants contend that the evidence doesn't show that two-thirds of the proposed class members are Indiana citizens.

The plaintiff's proposed class, rather than the complaint's broader allegations, provides the appropriate measure of the class members' citizenship. The defendants are correct that the court, and not the plaintiff,

ultimately determines the appropriate class definition, but the court isn't inclined to broaden the proposed class based on the allegations in the complaint. L.K.K.'s proposed class includes only Indiana citizens. A plaintiff can limit the scope of class actions, Avila v. Van Ru Credit Corp., No. 04-C-3234, 1995 WL 41425, at *2 (N.D. Ill. Jan. 31, 1995) ("Class actions may be limited to specified geographic areas notwithstanding the fact that broader classes could have been certified.") (citations omitted), and can restrict the scope of her allegations so as to avoid federal jurisdiction under CAFA, including proposing a class limited to citizens of the home state. See Johnson v. Advance America, 549 F.3d 932, 937-938 (4th Cir. 2008). In Johnson v. Advance America, the court found that there wasn't minimal diversity where the plaintiffs limited the definition of their proposed class to "citizens of South Carolina." Id. at 937. The court rejected the defendant's argument that the proposed class wasn't limited to *current* citizens of South Carolina, and instead stated that "if a putative class member had in fact changed his or her State of domicile by the time the complaint had been filed, then the person no longer would qualify as a member of the class." Id. at 937-938. The court further reasoned that even if minimal diversity existed, "as a matter of logic . . . if the class is limited to citizens of South Carolina, it could hardly be claimed that two-thirds of the class members were not citizens of South Carolina." Id. at 938; *see also* In re Hannaford Bros. Co. Customer Data Security Breach Litig., 564 F.3d 75, 81 (1st Cir. 2009) (agreeing with the Fourth Circuit that defining the class to include only citizens of a particular state can defeat federal

jurisdiction under CAFA); <u>Anderson v. Hackett</u>, No. 09-CV-227, 2009 WL 2371832, at *2 and *4 (S.D. Ill. July 30, 2009) (finding that this element was met where the plaintiff defined the proposed class as "[c]urrent Illinois citizens . . ."). Accordingly, L.K.K. has shown that at least two-thirds of the proposed plaintiff class will be citizens of Indiana.

L.K.K. next must show that "the primary defendants[] are citizens of [Indiana]." 28 U.S.C. § 1332(d)(4)(B). "CAFA's home state exception is fairly narrow, encompassing only those suits where . . . *all* of the primary defendants are citizens of the same state. Suits involving a primary defendant who is not a citizen of the forum state cannot qualify for the exception." <u>In re Hannaford Bros. Co.</u>, 564 F.3d at 80 (emphasis added); *see also* <u>Frazier v. Pioneer Ams. LLC</u>, 455 F.3d 542, 546 (5th Cir. 2006) (finding that the plain meaning of "the primary defendants" in 28 U.S.C. § 1332(d)(5) [the exception to CAFA jurisdiction for class actions involving defendants that are States, State officials or other governmental entities] "requires that all primary defendants be states. Had Congress desired the opposite, it would have used 'a' and the singular, or no article.").

Many courts "agree that the term 'the primary defendants' means that *all* primary defendants must be citizens of the state concerned." <u>Manson v. GMAC Mortg., LLC</u>, 602 F. Supp. 2d 289, 296-297 (D. Mass. 2009) (emphasis in original) (citations omitted). "[A]s evident from the statute's use of the phrase *'the* primary defendants' rather than *'a* primary defendant', the plain language of the statute requires remand only when *all* of the primary defendants are

residents of the same state in which the action was originally filed." Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 514 (E.D. Pa. 2007) (emphasis in original) (internal quotations and citations omitted); *see also* Brook v. UnitedHealth Group, Inc., 06-CV12954, 2007 WL 2827808, at *6 (S.D. N.Y. Sept. 27, 2007) ("The plain language of the home state controversy section demonstrates that Congress intended that the State citizen requirement pertain to all primary defendants."); Irish v. BNSF Ry. Co., No. 08-CV-469, 2009 WL 276519, at *14 (W.D. Wis. Feb. 4, 2009) (same).

Although CAFA doesn't define the term "primary defendant," several courts have defined "primary defendants" as "those parties that are allegedly directly liable to the plaintiffs, while 'secondary' defendants are . . . those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification." Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d at 515-516 (*quoting* Kitson v. Bank of Edwardsville, No. 06-528, 2006 WL 3392752, at *17 (S.D. Ill. Nov. 22, 2006)); *see also* Laws v. Priority Trustee Servs. of N.C., LLC, No. 3:08-CV-103, 2008 WL 3539512, at *4 (W.D. N.C. Aug. 11, 2008) (same). Other courts have taken different approaches leading to some incongruence. Brook v. UnitedHealth Group, 2007 WL 2827808 at *5. For example, "it has been held that a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or

(5) is the only defendant named in one particular cause of action." Id. (citing cases).

PCI and Burns Harbor are the only defendants that are citizens of Indiana.[2] For the home state exception to apply, L.K.K. must show that *all* primary defendants are citizens of Indiana. L.K.K. doesn't base its claims against the diverse defendants on a theory of vicarious liability; nor does L.K.K. merely seek indemnification or contribution from those defendants. Rather, L.K.K. seeks to recover against the diverse defendants directly and to the same extent as the in-state defendants. In her remand memorandum, L.K.K. alleges that "each Defendant consciously and knowingly released toxic chemicals into the Lake County environment." (doc. # 35, p. 35). L.K.K. doesn't suggest that the in-state defendants are any more culpable or liable than the diverse

---

[2] Because PCI is a corporation with its principal place of business in Indiana, it's deemed a citizen of Indiana. 28 U.S.C. § 1332(c)(1). Burns Harbor is a limited liability company and has its principal place of business in Indiana. Although an LLC's citizenship is the citizenship of its members for purposes of diversity jurisdiction, Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998), this rule doesn't apply to jurisdiction under CAFA. "As part of CAFA, Congress chose to modify existing case law concerning the citizenship of unincorporated associations." Bond v. Veolia Water Indianapolis, LLC, 571 F. Supp. 2d 905, 909 (S.D. Ind. 2008) (*citing* 28 U.S.C. § 1332(d)(10)). CAFA provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). In Bond v. Veolia Water, the court, after providing a detailed well-reasoned analysis, determined that pursuant to § 1332(d)(10), limited liability companies should be treated as unincorporated associations under CAFA. 571 F. Supp. 2d at 909-912; *see also* Coleman v. Chase Home Fin., LLC, No. 08-2215, 2009 WL 1323598, at *2 (D. N.J. May 11, 2009) (citing several cases where courts have determined that § 1332(d)(10) applies to LLCs). This court finds the reasoning in Bond v. Veolia Water persuasive, and finds that Burns Harbor is an Indiana citizen for CAFA purposes.

defendants. This court needn't decide the definitive meaning of the term "primary defendants" because L.K.K. hasn't provided enough to show that the diverse defendants are secondary. *See e.g.*, Brook v. UnitedHealth Group, 2007 WL 2827808, at *6 (concluding that deciding the definitive meaning of the term 'primary defendants' was unnecessary because, in light of the plaintiffs' concession that there was no distinction between the culpability and liability of the various defendants, there was no "rational[ ] basis upon which to differentiate the defendants' status as being primary or secondary"). Because not all the primary defendants are citizens of Indiana, the home state exception doesn't apply.

## B. The Local-Controversy Exception

The local-controversy exception was intended to be a narrow one, "with all doubts resolved 'in favor of exercising jurisdiction over the case.'" Evans v. Walter Indust., 449 F.3d at 1163 (*citing* S. REP. NO. 109-14 at 42 (2005), *reprinted in* U.S.C.C.A.N. 3, 40). The Senate Report indicates that this exception was intended to be narrow so as not to "become a jurisdictional loophole." Evans v. Walter Indust., 449 F.3d at 1163 (*citing* S. REP. NO. 109-14 at 39, *reprinted in* U.S.C.C.A.N. at 38).[3] "In assessing whether each of these

---

[3] The court of appeals has expressed some skepticism as to the value of the Senate Report. Brill v. Countrywide, 427 F.3d at 448 ("[W]hen the legislative history stands by itself, as a naked expression of 'intent' unconnected to any enacted text, it has no more force than an opinion poll of legislators--less, really, as it speaks for fewer.").

criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy - a controversy that uniquely affects a particular locality to the exclusion of all others." Id.

Under the "local controversy" exception, district courts must decline jurisdiction where four requirements are met:

> (1) more than two-thirds of the members of the proposed plaintiff class are citizens of the original filing state;

> (2) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the original filing state;

> (3) the principal injuries were incurred in the original filing state; and

> (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the case.

Hart v. FedEx Ground Package Sys., 457 F.3d at 679 (*citing* 28 U.S.C. § 1332(d)(4)(A)).

L.K.K. has met the first, third and fourth requirements under this exception. Two-thirds of the class members must be citizens of Indiana, and as previously explained, because the proposed class is limited to Indiana *citizens*, this requirement is satisfied. The principal injuries resulting from the alleged conduct must have (by definition) occurred in Indiana — L.K.K. contends that all injuries occurred in Lake County, Indiana and seeks compensation

necessary to fund a medical monitoring program to protect against air pollution in Lake County, Indiana emanating from the defendants' Indiana facilities — so the principal injury requirement is satisfied. Finally, the parties don't dispute that no other class action asserting similar allegations was filed in the past three years.

The second element — the significant defendant provision — needs more discussion. This subsection requires that the class action include at least one defendant who is a citizen of Indiana "from whom *significant relief* is sought by members of the plaintiff class" and "whose alleged conduct forms a *significant basis* for the claims asserted by the proposed plaintiff class[.]" 28 U.S.C. § 1332(d)(4)(A)(i)(II) (emphasis added).

The statute doesn't define the term "significant relief," but several courts have held that a class seeks "'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class." Evans v. Walter Indust., 449 F.3d at 1167 (*citing* Robinson v. Cheetah Transp., No. 06-0005, 2006 WL 468820 (W.D. La. Feb. 27, 2006), and Kearns v. Ford Motor Co., No. 05-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005)). "[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants . . . ." Robinson v. Cheetah Transp., 2006 WL 468820, at *3; *see also* Joseph v. Unitrin, Inc., No. 1:08-CV-77, 2008 WL

3822938, at *7 (E.D. Tex. Aug. 12, 2008) (considering the number of class members that have claims against the defendant and whether the defendant is "just small change" in comparison to what the class is seeking from other co-defendants) (citations omitted). The Tenth Circuit has held that this determination shouldn't be based on the in-state defendant's ability to pay a judgment. Coffey v. Freeport-McMoran Copper & Gold, ___ F.3d ___, 2009 WL 2840508, at *4 (10th Cir. Sept. 4, 2009) ("[A] 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.'").

A few courts have found that the significant relief requirement was met when all class members asserted claims against the in-state defendants and sought the same damages from all defendants. *See e.g.,* Coffey v. Freeport-McMoRan Copper & Gold Inc., 623 F. Supp. 2d 1257, 1266-1267 (W.D. Okla. 2009), *aff'd*, 2009 WL 2840508 (10th Cir. 2009) (finding that the in-state defendant was significant where all putative class members alleged claims against it and sought the identical-injunctive and monetary-relief from all defendants); Joseph v. Unitrin, 2008 WL 3822938, at *7 (finding this element met where all class members had claims against the in-state defendant and where the class members were seeking the full panoply of damages against the defendant under a theory of joint and several liability).

CAFA doesn't define "significant basis," either. Courts construing this term have found that it doesn't require that every member of the proposed

plaintiff class assert a claim against the local defendant, but instead "requires the alleged conduct to form a *significant basis* of all the claims asserted." Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 155 (3d Cir. 2009). "[A] defendant's conduct forms a "significant basis" of the plaintiff class' claim when it represents a large part of the claim." Irish v. BNSF Ry., 2009 WL 276519, at *14 (citations omitted). "Interpreting 'significant' to mean the large portion or a sizeable portion comports with the intent of CAFA to limit these exceptions to truly in-state disputes." Id. at *15 (*citing* Evans v. Walter Indust., 449 F.3d at 1163).

Most of the courts that have considered whether a defendant's conduct formed a "significant basis" for the claims asserted by the putative class have "focused their evaluation on a comparison of the alleged role played by a particular defendant with the roles of other named co-defendants." Joseph v. Unition, 2008 WL 3822938, at *8 (citations omitted); *see also* Manson v. GMAC Mortg., 602 F. Supp. 2d at 295-296 ("Courts that have addressed the issue have required that the conduct of an allegedly 'significant' defendant 'must be significant in relation to the conduct alleged against other defendants in the complaint . . . .'") (citations omitted); Kaufman v. Allstate, 561 F.3d at 157 ("The local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all the Defendants."). The Kaufman court highlighted the importance of comparing the local defendant's

alleged conduct to the conduct of the other defendants, and noted that the court could consider:

> 1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the Defendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the Defendants; 7) whether the Defendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes.

Id. at 157, n. 13.

In a similar case to this one, the Eleventh Circuit addressed both the significant relief and significant basis prongs of the exception. Evans v. Walter Indus., 449 F.3d at 1159. The plaintiffs in Evans v. Walter Indus., brought a class-action suit contending that the defendants operated manufacturing facilities in the Anniston, Alabama area and polluted the environment for several years by releasing various waste substances in the area. 449 F.3d at 1161. The district court had found that U.S. Pipe, an Indiana defendant, was a significant defendant because "(1) the complaint accused all the defendants of contamination in the Anniston area; and (2) U.S. Pipe owned and operated two foundry facilities during a substantial portion of the relevant time period." Id. at 1167. The court of appeals disagreed.

The Evans court first found that the evidence didn't "provide any enlightenment at all with respect to the significance of the relief that [was] sought against U.S. Pipe, or its comparative significance relative to the relief

sought from the other 17 named co-defendants." 449 F.3d at 1167. With respect to whether U.S. Pipe's alleged conduct formed a significant basis for the plaintiff's claims, the court again found that the plaintiffs' evidence offered "no insight into whether U.S. Pipe played a significant role in the alleged contamination, as opposed to a lesser role, or even a minimal role." Id. The court reasoned that U.S. Pipe had operated two facilities, one which ceased operations by 1951 or earlier and one that was "somewhat south of the area occupied by most of the class members." Id. at 1168. The other defendants had "operations much nearer the largest concentration of identified class members, suggesting that U.S. Pipe's liability might not be significant compared to other defendants, and that the conduct of U.S. Pipe might not form a significant basis for the claims of the class." Id. The court concluded: "The evidence does not indicate that a significant number or percentage of putative class members may have claims against U.S. Pipe, or indeed that any plaintiff has such a claim." Id. at 1167 (footnoted omitted).

When considering whether either PCI or Burns Harbor is a significant defendant, it is appropriate to consider the number of class members who were allegedly harmed by and have claims against the in-state defendant; the number, nature and importance of the claims asserted against the in-state defendant; the relief sought against the in-state defendant compared with all defendants; the conduct of the in-state defendant as it relates to the conduct that forms the basis for the complaint as a whole; and a comparison of the in-

state defendant's role compared with that of the other defendants.[4] L.K.K. contends that PCI and Burns Harbor are significant because they are two of the primary polluters at issues in this litigation and because their conduct didn't affect only a mere subset of the proposed class, but rather, affected the entirety of the proposed class. In the complaint, L.K.K seeks the same injunctive relief in the form of a medical monitoring program against all defendants, and although not specifically stated, she indicates that the putative class asserts joint and several liability. Accordingly, the plaintiff states that Burns Harbor and PCI are no less significant a defendant than any of the other named defendants.

The defendants respond by initially noting that in the complaint, L.K.K. spends several paragraphs discussing the relative ranking of schools in Lake County where the plaintiff claims the "air was most toxic", and then lists the defendants she considers to be "most responsible" for the pollution in those

---

[4] The court is aware of at least one court that has rejected the argument that a defendant is only "'significant" if its alleged conduct is as bad as or worse than the alleged conduct of its co-defendants." Anderson v. Hackett, No. 09-CV-227, 2009 WL 2371832, at *5 (S.D. Ill. July 30, 2009). That court looked instead to whether the in-state defendant was a significant defendant because "the allegations against it form[ed] the basis for a right to relief for most or all the members of the proposed plaintiff class." Id. "Instead of comparing [the in-state defendant's] conduct to the [diverse defendants'] conduct, the Court must compare [the in-state defendant's] conduct with the conduct that forms the basis of the Complaint as a whole." Id. The court found that if the plaintiffs had only brought the action against the in-state defendant, the classes proposed by the plaintiffs and the relief sought by them would remain almost unchanged and therefore, they were significant defendants. Id. This court agrees with the courts that find it appropriate to consider the in-state defendant's conduct as it compares with the conduct of the other named defendants.

areas. Those defendants include Mittal, HARSCO, ECL, Union Tank, USS, and Dover Chemical; not PCL or Burns Harbor. (Plf.'s Compl. ¶¶ 30-38). The defendants conclude that according to the plaintiff's own allegations, PCL and Burns Harbor aren't significant defendants.

The defendants further present evidence that Burns Harbor has no presence in Lake County, but rather, is located in Porter County, sixteen miles east of all the East Chicago schools identified in the plaintiff's complaint, and three and a half miles east of the Lake County border. Through the affidavit of Steven Root, Certified Consulting Meteorologist, Burns Harbor presents evidence of publicly-available wind direction data collected by the National Weather Services over the ten-year period from 1999 through 2008 at the Gary, Indiana Weather Station showing that the prevailing wind direction in the northern Lakeshore area where Burns Harbor is located generally heads away from East Chicago and the public schools cited in the complaint. (Root Aff., Doc. 42-5, ¶ 11) ("[W]hen considerng the Gary Station wind direction data, downward dispersion to the west is only indicated to have occurred for 2.3% of the total 10-year period . . . ."). Burns Harbor also presents evidence that its predecessor acquired Burns Harbor steel plant pursuant to a bankruptcy sale order entered April 23, 2003 by the U.S. Bankruptcy Court for the Southern District of New York in *In re Bethlehem Steel Corp., et. al.* Under the sale order's express terms, the plaintiff's nuisance claim against Burns Harbor is likely

barred to the extent it is based upon claims arising prior to the 2003 closing date.

The defendants contend that although PCI's operations were in Lake County, L.K.K. only alleges that it emitted two of the air pollutants at issue — urethane and diisocyanaes — in a case alleging the potential for future harm as a result of exposure to a significant number of air pollutants. PCI submitted an affidavit from licensed professional engineer David Jordan, who says the EPA maintains a toxic release inventory program which (among other things) requires facilities to annually report the releases of certain chemicals from industrial facilities. The TRI website contains detailed data about the respective air emissions reported for each of the eleven defendants as well as other industrial facilities in the same geographical region. After making certain adjustments to the emissions reported by PCI, Mr. Jordan analyzed the relative significance of the amounts of chemicals released by PCI as compared to the amounts of chemicals released by the other named defendants. Based on a review of the TRI data, Mr. Jordan opined that "PCI is the defendant with the lowest amount of air emissions by far of the chemicals identified in the Complaint." (doc. 43, ¶ 9).

L.K.K. counters by stating that this is a fault-based nuisance claim and that the injuries sustained by the class members flow from a common nucleus of operative facts — the defendants' knowing pollution. She contends that PCI and Burns Harbor can be held jointly and severally liable for the nuisance

created by the defendants' air pollution and held liable for the entirety of the class members' injuries alleged in the complaint. L.K.K. therefore concludes that the class seeks significant relief from the in-state defendants and that their conduct forms a significant basis for the claims of the class.

The class members' claims likely will fall under Indiana's Comparative Fault Act, effective as of 1985. IND. CODE § 34-51-2-1 ("This chapter governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property . . . ."). Under the Comparative Fault Act, a jury will decide the amount of damages owed by each defendant based on the percentage of fault attributable to that defendant. IND. CODE § 34-51-2-8; *see also* <u>Control Tech., Inc. v. Johnson</u>, 762 N.E.2d 104, 109 (Ind. 2002). The Comparative Fault Act was intended to abolish joint and several liability for most fault-based claims. <u>Flowers v. Southwest Airlines Co.</u>, No. 1:05-CV-1399, 2007 WL 118874, at *6 (S.D. Ind. Jan. 10, 2007) (citations omitted) (*citing* <u>Control Tech. v. Johnson</u>, 762 N.E.2d at 109).

L.K.K. provides no evidence to support her claim that the relief sought against PCI or Burns Harbor is significant when compared to the other named defendants. She doesn't allege what potential health impact the in-state defendants' alleged air pollution has had (or may have) on her or the putative class. Even if joint and several liability applies, that would only affect the significant relief component of the test, not the significant basis component. *See* <u>Evans v. Walter Indust.</u>, 449 F.3d at 1167, n. 7 ("[T]he mere fact that relief

25

might be sought against U.S. Pipe for the conduct of others (via joint liability) does not convert the conduct of others into conduct of U.S. Pipe so as to also satisfy the 'significant basis' requirement").

The record doesn't provide evidence that PCI or Burns Harbor played a significant role in emitting toxic chemicals resulting in the pollution at issue in the plaintiff's complaint. L.K.K.'s complaint doesn't single out PCI or Burns Harbor from the other named defendants, but instead, singles out six other defendants as "most responsible" for pollution near schools in East Chicago. There is no claim as to the magnitude of Burns Harbor's or PCI's culpability in relation to the other nine defendants; instead, the only evidence before this court leads to the inference that Burns Harbor's and PCI's alleged conduct doesn't form a significant basis for the putative class' claims.

Burns Harbor's facility is sixteen miles east of all the schools mentioned in the complaint and further away than most of the other defendants. It is likely that under the bankruptcy court's sale order, Burns Harbor isn't liable for claims arising before the 2003 closing date. Similar to the reasoning in Evans, based on Burns Harbor's distance from the schools and the restricted time period for which it could be liable, the court finds that Burns Harbor isn't a significant defendant for CAFA purposes.

Although PCI is located in East Chicago, Lake County, the defendants presented evidence that the chemicals PCI allegedly released weren't significant when compared to the alleged toxic chemicals released by the other

defendants. Mr. Jordan opined that "PCI is the defendant with the lowest amount of air emissions by far of the chemicals identified in the Complaint." (doc. 43, ¶ 9). Nothing in this record shows that PCI's alleged conduct in releasing urethane and diisocyanaes forms a significant basis for the putative class's claims in this action.

The evidence before the court gives rise to the inference that both Burns Harbor and PCI are not significant defendants in this action.


## IV.  Conclusion

For the reasons stated above, the court DENIES the plaintiff's motion to remand (document # 34).

SO ORDERED.

ENTERED:  October 14,  2009

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court